# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
May 8, 2001 Session

## STATE OF TENNESSEE v. LAVERNE LONG

**Appeal from the Criminal Court for Shelby County**
**No. 99-10023     Arthur T. Bennett, Judge**

_____

**No. W2000-02773-CCA-R3-CD  - Filed July 13, 2001**

_____

The Defendant, Laverne Long, entered a guilty plea to reckless homicide, a Class D felony, in exchange for a two year sentence as a Range I, standard offender. Following an evidentiary hearing on the Defendant's motion to suspend her sentence, the trial court denied alternative sentencing. The Defendant now appeals as of right from the denial of alternative sentencing. We find no error; thus, we affirm the judgment of the trial court.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which ALAN E. GLENN, J. and L.T. LAFFERTY, SR.J., joined.

William Gosnell, Memphis Tennessee, for the appellant, Laverne Long.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Camille McMullen, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In July 1999, the Defendant worked as a van driver for Children's Palace Learning Academy, a daycare provider in Shelby County, Tennessee. Rita Hugghis worked as the child attendant on the van. Both the Defendant and Ms. Hugghis worked split shifts: they worked from approximately 6:00 a.m. until 8:30 a.m. picking up children and taking them to the daycare center, and then they returned in the afternoon to take the children home.

On July 21, 1999, the Defendant and Ms. Hugghis worked their regular morning shift and "clocked out" about 8:30 a.m. The Defendant returned about 3:50 p.m., and Ms. Hugghis returned about 4:00 p.m. After Ms. Hugghis returned, she discovered the body of Darnecia Slater, a twenty-two-month-old girl, in the daycare van. The child had been left in the van for approximately seven and one-half hours on a hot summer day, and she died from the heat inside the van. Both the

Defendant and Ms. Hugghis pled guilty to reckless homicide for their actions in failing to ensure that Darnecia Slater was removed from the van.

At the hearing, the Defendant testified that she and Ms. Hugghis arrived at the daycare center before 8:30 a.m. on July 21. When the Defendant arrived, she got out of the van and took the children who were already out of the van inside to get breakfast. She left Ms. Hugghis in the van with the three toddlers who were still in the van. Although the Defendant typically checked behind Ms. Hugghis to make sure that all the children were removed from the van, she did not do so on this day because she had an appointment and was in a hurry. She asserted that it was Ms. Hugghis' job to make sure that the children got off the van.

The Defendant testified that she had previously worked as a daycare van driver for Heritage Daycare Center, and she admitted that she had been reprimanded at least once by that center for leaving children on the van. She also admitted that she had pled guilty to a drug charge in 1988 or 1989. The presentence report reflects that in 1990 the Defendant pled guilty to possession of cocaine with intent to sell, and she was sentenced to three years probation. The Defendant testified that she had a drug problem at that time and that she sought and received help for the problem. She said she became drug and alcohol free and that she had not had any more problems with the law. At the time of the hearing, the Defendant was thirty-six years old. She testified that she had four children, ranging in age from fourteen to eighteen. She was employed as a resident manager at Windgate Apartments.

Karen Luvaas, a child protection investigation team coordinator for the Memphis Child Advocacy Center, testified on behalf of the State. She explained that at the request of the State, she had collected data regarding children being left in vehicles in Shelby County. According to Ms. Luvaas, there were nine reported incidents of children left unattended in vehicles in 1998: six were by parents or guardians, two were by daycare staff, and the cause of one was unknown. In 1999, there were twenty-three reported instances: nineteen were by parents or guardians, and four were by daycare staff. From the beginning of 2000 until May 5, 2000, there were six reported instances: four were by parents or guardians, one was by daycare staff, and the cause of one was unknown.

Following the hearing, the trial court found that granting the Defendant an alternative sentence would depreciate the seriousness of the offense. The court specifically noted that the Defendant was entrusted with the custody and care of children and that she had previously been reprimanded by her former employer for leaving a child unattended in a daycare vehicle. While the Defendant testified that she regularly checked behind Ms. Hugghis to ensure that all the children were off the van, she suggested that it was not her responsibility to do so. The trial court thus determined from the Defendant's testimony "that she is evasive and shifts the blame elsewhere." Because of the shocking nature of the crime and the Defendant's failure to acknowledge her culpability, the trial court found that granting probation or other alternative sentencing would depreciate the seriousness of the offense.

The trial court also found that confinement was necessary to provide an effective deterrence. In recognizing the problems with child supervision in Memphis daycare centers, the court pointed to the statistics cited by Ms. Luvaas in her testimony regarding children left unattended in daycare vehicles by daycare staff. The court also noted that the State of Tennessee was considering new regulations for Shelby County daycare centers because of this problem. The court found that the Defendant should serve as an example to other daycare employees such that they will understand the magnitude of their responsibility. The court thus stated, "Applying the deterrence factor in the instant case will best convey to Shelby County day care employees that they are subject to criminal culpability for failing in their responsibilities." The trial court accordingly denied the Defendant's request for a suspended sentence and ordered her to serve her sentence in confinement.

On appeal, the Defendant argues that she should have been granted an alternative sentence, specifically probation. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

After reviewing the record below, we conclude that the trial court imposed a lawful sentence after giving due consideration to appropriate and applicable sentencing principles. In addition, the trial court's findings of fact are adequately supported by the record. Thus, we affirm the trial court's denial of alternative sentencing.

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6); State v. Lane, 3 S.W.3d 456, 462

(Tenn. 1999). Guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing can be found in Tennessee Code Annotated § 40-35-103(1), which sets forth the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

See State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000); State v. Ashby, 823 S.W.2d 166, 170 (Tenn. 1991).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the potential for rehabilitation or treatment of the defendant in determining the appropriate sentence. See id. § 40-35-103(5).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is eight years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. Id. § 40-35-303(a). Probation is to be automatically considered as a sentence alternative for eligible defendants; however, the burden of proving suitability for probation rests with the defendant. Id. § 40-35-303(b). In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, including physical and mental condition; the deterrent effect on the defendant; and the likelihood that probation is in the best interests of both the public and the defendant. See Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974); State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999).

Here, the trial court found that the Defendant was entitled to the presumption of alternative sentencing but that the presumption had been rebutted because alternative sentencing would depreciate the seriousness of the offense and because confinement is particularly suited to provide an effective deterrent to others likely to commit the offense. The court determined that the Defendant should not be granted probation for the same reasons. We are unable to conclude that the court erred or abused its discretion in sentencing the Defendant.

Generally, to deny probation or another alternative sentence based on the seriousness of the offense, the offense "as committed, must be 'especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring" an alternative sentence. State v. Cleavor, 691 S.W.2d 541, 543 (Tenn.

1985) (citation omitted); see also State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991).

We agree with the trial court that the circumstances surrounding this offense are particularly shocking and reprehensible and that the nature of the offense outweighs the factors favoring probation or another alternative sentence. The Defendant pled guilty to reckless homicide for her participation in circumstances leading to the death of Darnecia Slater, a twenty-two-month-old child. The Defendant was charged with the responsibility of picking up young children and delivering them to the daycare center. She clocked out and left on July 21, 1999, while young Darnecia Slater was still strapped into her car-seat. Due to her tender age, the child was unable to free herself from the car-seat or otherwise remove herself from the van. Her well-being was entirely dependant upon the care and attention of others. Because the Defendant did not fulfill her responsibility of safely delivering Darnecia Slater into the daycare center, the child remained in the stifling hot van for seven and one-half hours, where she ultimately died from the heat in the van.

Additionally, our supreme court has stated that "trial testimony that the defendant acknowledged little culpability for his [or her] actions supports a finding that a sentence of confinement is necessary to avoid depreciating the seriousness of" the offense. State v. Gutierrez, 5 S.W.3d 641, 646 (Tenn. 1999). The trial court in this case specifically found that the Defendant failed to acknowledge her culpability. During the hearing, the Defendant testified that she routinely checked behind the van attendant to make sure the children were off the van, but she did not do so in this instance. She asserted that her job was to drive the van, not to the get the children off the van. Also, the Defendant had been previously reprimanded at her prior job as a van driver for leaving children on a van. Thus, the evidence supports the trial court's finding that the Defendant failed to acknowledge her culpability and that a sentence of confinement was necessary to avoid depreciating the seriousness of the offense.

The evidence also supports the trial court's finding that confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses. In State v. Hooper, 29 S.W.3d 1 (Tenn. 2000), our supreme court recognized the "imprecision" of the "science" of deterrence and stated that "trial courts should be given considerable latitude in determining whether a need for deterrence exists and whether incarceration appropriately addresses that need." Id. at 10. The court then maintained that the appellate courts will

> presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

Id. The record in this case supports the conclusions that there is a need to deter similar crimes in the Shelby County area and that the incarceration of the Defendant may rationally serve as a deterrent to others similarly situated.

Karen Luvaas testified that the instances of children being left unattended in vehicles had risen from nine cases in 1998 to twenty-three cases in 1999. In 1998, two cases involved daycare staff; in 1999 four cases involved daycare staff. Between January and May of 2000, six instances had been reported, one of which involved daycare staff. These statistics are a proper consideration in determining the need for deterrence, and they indicate the need to deter daycare staff from neglecting their duties to care for the children of Shelby County. See id. at 10-11. Also, the record reflects the enormous amount of publicity surrounding the death of Darnecia Slater and the Defendant's involvement in the child's death. The publicity was such that the Defendant filed a motion for a change of venue due to the excessive publicity surrounding her case. Because of this extensive publicity, the Defendant's sentence is likely to be known by the general public, making a sentence of confinement more likely to deter similar conduct by others who might otherwise neglect the duty of care they owe to children in daycare centers. See id. at 11. In addition, the supreme court has stated that "[r]epeated occurrences of the same type of criminal conduct by a defendant generally warrant a more emphatic reminder that criminal actions carry consequences." Id. at 12. While the statute only refers to the need for general deterrence, the supreme court noted that "general deterrence is possible only after specific deterrence has first been achieved." Id. Thus, specific deterrence is another factor which may be considered when determining the need for deterrence. Here, the Defendant had previously been reprimanded for neglecting children by leaving them in a daycare van, yet she again failed to ensure that all the children were safely off the van the day that Darnecia Slater died. Therefore, the need for specific deterrence is evident in this case as well.

Accordingly, we conclude that the trial court properly denied alternative sentencing based on the need for deterrence and the need to avoid depreciating the seriousness of the offense. The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

-6-